IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BONNIE HOOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV- 21-cv-152-RAW |
| | ) |
| | ) |
| (1) PITMON OIL AND GAS COMPANY, | ) |
| a/k/a JACKIE L. PITMON, | ) |
| a business in Oklahoma;  (2) A & W, | ) |
| a restaurant franchise business in Oklahoma; | ) |
| and (3) CHRIS BURBA, Individually, | ) |
| | ) JURY TRIAL DEMANDED |
| | ) ATTORNEY LIEN CLAIMED |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Bonnie Hooks, and submits her Complaint against the Corporate Defendants: Pitmon Oil and Gas Company a/k/a Jackie L. Pitmon ("Pitmon Oil and Gas"), A & W, a restaurant franchise ("Restaurant"); and Chris Burba ("Supervisor"), individually, and alleges and states as follows:

### I.    PARTIES

1. The Plaintiff in this matter, Bonnie Hooks (hereinafter "Plaintiff"), is an adult African American (Black) female, who, for all material times, was residing in Tatums, Oklahoma, County of Carter.  At the time of her termination, Plaintiff was sixty-one (61) years old.

2. The Corporate Defendant, Pitmon Oil and Gas Company a/k/a Jackie L. Pitmon, upon information and belief, is a corporation or entity doing business in Murray County, Oklahoma.

3. The Individual Defendant, Chris Burba, upon information and belief, is an individual residing in Davis, Oklahoma.

4. The Corporate Defendant, A & W, upon information and belief, is a restaurant franchise business, corporation or entity doing business in Murray County, Oklahoma. Further, said restaurant franchise may be owned by Chris Burba and Arlene Burba.

5. During all periods relevant to this action, Defendant Chris Burba (Caucasian or White) was in a supervisory position at the A &W restaurant, which was a restaurant franchise maintained and operated within the gas station/store owned by Pitmon Oil and Gas Company a/k/a Jackie L. Pitmon, in Murray County, Oklahoma.

## II.   JURISDICTION AND VENUE

Plaintiff seeks relief through her causes of action based on (1) Race (Black/African American) Discrimination and Retaliation in her employment with Defendant, which is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended; (2) Age Discrimination In Employment Act of 1967 (ADEA), pursuant to 29 U.S.C §621; (3) 42 U.S.C §1981 for intentional Race Discrimination and Retaliation, including her unlawful termination; and (4) state claims of Intentional Infliction of Emotional Distress.

Jurisdiction over Plaintiff's claims is vested in this Court under 42 U.S.C. § 2000e5(f), and 28 U.S.C. § 1331. All of the actions complained of occurred in Murray County and Carter County, Oklahoma, and the Defendants may be served in those counties. Both Murray County and Carter County are within the Eastern District of the United States District Court of Oklahoma and venue is appropriate in this Court.

### III.   PROCEDURE

Plaintiff filed her Charges of Discrimination with the Oklahoma Attorney General's Office, Office of CR Enforcement, whereby an investigation ensued. Thereafter, the agency mailed Plaintiff her Right to Sue letter on or about February 23, 2021 entitling her to institute a civil action in the appropriate forum within ninety (90) days of the date of receipt of said notice. This action was initiated within the said ninety (90) days. Plaintiff has timely and properly exhausted her administrative remedies.

### IV.   FACTS

1. Plaintiff hereby incorporates by reference each of the allegations contained in roman numerals 1 through 3, above.

2. On or about August 15, 2004, Plaintiff began work as a Breakfast Cook/Clerk at A &W, which was a restaurant maintained and operated within the gas station/store owned by Pitmon Oil and Gas Company a/k/a Jackie L. Pitmon. Plaintiff's paychecks were provided by Defendant Pitmon Oil and Gas Company a/k/a Jackie L. Pitmon, and Plaintiff physically worked in the A & W restaurant.

However, Plaintiff reported to both Mr. Pitmon, owner of Pitmon Oil and Gas Company a/k/a Jackie L. Pitmon and Chris and Arlene Burba, who, on information and belief are the franchise owners of the A & W restaurant. This interplay justifies liability upon both Corporate Defendants, regardless of their conflicting business entity status.

3. Plaintiff was qualified to perform her job duties and did so in a satisfactory manner. During her tenure with the company, Plaintiff consistently performed duties outside of her job description, worked overtime to cover for other employees, and worked different positions within the company, when needed.

4. For purposes of Plaintiff's 42 U.S.C. §1981 claims, Defendants intentionally discriminated and retaliated against Plaintiff, beginning as far back as approximately January 19, 2016. For example, on one occasion, Plaintiff requested to leave at 9:30 am for a family matter, which was initially approved by Plaintiff's supervisor, Chris Burba. After Plaintiff left for leave, she received a call on her personal cell phone by supervisor Chris Burba. He verbally berated Plaintiff stating, "there are no dependable black people" and told Plaintiff that he hated her. Humiliated and emotionally distraught, Plaintiff returned to work just a couple of hours later. For the remainder of her shift, supervisor Chris Barba waltzed around her work area while throwing objects against the wall as a display of his disdain for her.

5. On another occasion, while Plaintiff was stocking tomatoes, she asked supervisor Chris Barba where he wanted the tomatoes stored. In response, the

supervisor yelled at Plaintiff calling her "stupid", "silly", and "unlearned" and told Plaintiff to "figure it out."

6. After the death of Plaintiff's nephew, she requested one (1) hour of bereavement leave. Supervisor Chris Barba denied Plaintiff's leave request and stated "this is unacceptable…you don't work for your family, you work for me." The company had a practice of sending flowers and cards to the Caucasian/White employees, however Plaintiff did not receive the same compassion or gifts.

7. At another time, supervisor Chris Barba made false allegations against Plaintiff that she was stealing candy from the store. Plaintiff later noticed a Caucasian/White employee rummaging through her vehicle. When Plaintiff asked for an explanation, the employee responded that supervisor Chris Barba had ordered her to search Plaintiff's vehicle and to bring back "his candy." Candy was never discovered in Plaintiff's vehicle.

8. On a separate occasion, supervisor Chris Barba told Plaintiff that she was "worthless" and "I don't need you here." He added that he didn't have any other workers that could cover her job so he "put up with [Plaintiff's] blackness."

9. During another humiliating event, Chris Barba told Plaintiff that she was a "no good black woman" and that he would make her life miserable. These derogatory statements came after Plaintiff refused to use an unsteralized tomato-slicer to prepare food for the customers as she feared that it would make the customers sick.

10. During an "8 am" mandatory meeting, supervisor Chris Barba told a

group of employees not to listen to anything that Plaintiff instructed them to do because she does not know how to cook, and that Plaintiff was an "embarrassment" to him. He even stated that he had to *retrain* another employee that Plaintiff trained named Misty Redwine, when in fact that employee had been trained by Stephanie Coffee.

11.     On January 17, 2019, Plaintiff requested time out by submitting a Time Off Request. However, supervisor Chris Barba would not process the request for Plaintiff. Instead, he wrote in bold and black letters "WHAT" and pasted the request on the wall for all to see, while the other employees laughed. Similar time off requests by Caucasian/White employees including, but not limited to: Lesa Patrick, Brandon Baldwin, and Shanda Loper did not have similar language on them and was not pasted up for ridicule.

12.     In August 2019, Plaintiff submitted a written complaint to Human Resources requesting that the discrimination stop or for the company to send her to another store. However, no action was taken and the attacks continued.

13.     In October 2019, Plaintiff submitted another hand- written complaint to Arlene Barba, who Plaintiff was told was designated as the Human Resources personnel. Arlene Burba was also the Wife of supervisor Chris Barba. In the complaint, Plaintiff complained about the racial slurs by her supervisor, his drunkenness and his drug use. Arlene Burba assured Plaintiff that she would "fix" the matter, however nothing was ever done.

14.     During that same month and year, Plaintiff lodged another complaint

with Arlene Burba, asking that she stop "her husband" from discriminating against Plaintiff. Again, nothing came of Plaintiff's complaint of discrimination to the Human Resources personnel.

15. Multiple credible ex-employees will attest to the racially hostile environment and discrimination that Plaintiff endured and have committed to testify on behalf of Plaintiff at Trial.

16. In approximately September 2019, when Plaintiff reached the age of sixty (60) years old, she applied and was approved for Social Security benefits. Therefore, she advised the owner, Mr. Pitmon, and supervisor Chris Barba, that she could no longer work overtime hours and would need to have a set work schedule. Even though supervisor Chris Barba initially stated that it "wouldn't be a problem", he immediately began to harass and derogate Plaintiff about her new schedule. He stated to her that he wasn't going to need Plaintiff if she was not accessible to him when he needed her for work. The atmosphere became hostile and tense because supervisor Chris Barba's remarks to Plaintiff, in the presence of other employees, made the other employees treat Plaintiff poorly. Additionally, arguments began to ensue about Plaintiff's new schedule, while other Caucasian/White employees that were on Social Security benefits were not treated in the discriminatory manner that Plaintiff was so treated.

17. Plaintiff continued to be subjected to various forms of discrimination. For instance, in preparation for the December 2019 company Christmas Party, Plaintiff placed two (2) names on the list that she wanted to bring as guests. All

other Caucasian/White employees listed their guests as well. When supervisor Chris Barba saw the two (2) names listed by Plaintiff for the party, he stated in the presence of others "I guess we will have to get a bus to Tatum to get all the black people to the party." Tatum, Oklahoma is the hometown of Plaintiff and is a predominately African American community. His statements caused Plaintiff to be hurt and embarrassed. On the following day, Plaintiff reported the comments to the owner of the gas station/store, Mr. Pitmon. However, Mr. Pitmon did not discipline the supervisor, but instead made excuses for him such as "that's just the way he is, he means no harm."

18. A few days later, supervisor Chris Barba made it known to Plaintiff that Mr. Pitmon, his Father, had told him that Plaintiff lodged a complaint about his racially insensitive statements regarding "Tatum" and "black people." In retaliation, supervisor Chris Barba forced Plaintiff to clean a restroom that had been flooded with feces as he smirked.

19. Also, at the 2019 Christmas party, Plaintiff was denied recognition for her 15 years of service and did not receive an appreciation gift, although other Caucasian/White employees were recognized for their long service with the company.

20. Just a few weeks later, on or about January 19, 2020, one of the employees that regularly complained about Plaintiff's new schedule, Melissa Redwine (Caucasian/White), began accosting Plaintiff about Plaintiff's work area. In response, Plaintiff politely told the employee to mind her own area and she

[Plaintiff] would mind hers. The employee immediately went to complain to supervisor Chris Barba and his Wife, Human Resources Arlene Barba. Within less than an hour later, Plaintiff was told by management that she was no longer needed on the breakfast shift. Supervisor Chris Barba stated that *they* were cutting out the breakfast shift as they were losing money from it.

21. However, that same day Plaintiff's position on the breakfast shift was replaced and filled by Melissa Redwine (Caucasian/White), the employee that had accosted Plaintiff. Melissa Redwine was approximately 40 years of age, which was substantially younger than Plaintiff, and when placed in Plaintiff's position, she had only been employed two (2) years with the company. Moreover, on information and belief, Melissa Redwine, was a convicted felon.

22. On the following day, January 20, 2020, Plaintiff was provided a severance package from Defendants memorializing her termination.

23. Plaintiff brings the following causes of action:

### [COUNT ONE]
### [Title VII-Race Discrimination and Retaliation As Against Corporate Defendants: Pitmon and A&W]

For her First Cause of Action, Plaintiff hereby adopts the allegations contained in numerical paragraphs one (1) through twenty-three (23) as if fully restated herein, and further alleges and states:

24. Corporate Defendants, Pitmon Oil and Gas Company a/k/a Jackie L. Pitmon and A &W restaurant and/or its agents unlawfully discriminated and retaliated against Plaintiff due to her complaint of racial discrimination by her

supervisor, Chris Barba, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

25. Plaintiff is Black/African American, and therefore a member of a protected class. Defendants knew of Plaintiff's protected class.

26. While employed by Defendants, Plaintiff was subjected to different terms and conditions of employment and discriminated against because of her Race (Black/African American) by Defendants and agents of Defendants. Such adverse actions included but were not limited to: derogatory racial remarks; denial of recognition and awards for extended service with the company; denial of leave benefits; denial of her access to reporting complaints of discrimination by simply ignoring them; refusing to investigate her complaints of discrimination; and unlawful termination.

27. Other similarly situated employees that were not of Plaintiff's protected class, were treated more favorably and were not subjected to the same or similar adverse treatment.

28. Defendants' reasons for Plaintiff's termination and its actions are mere pretext for unlawful discrimination.

29. Plaintiff lodged complaints of racial discrimination to Human Resources Arlene Burba on several occasions, however the same was ignored, no investigation ensued, and the wrongdoers were not subjected to any disciplinary action.

30. Plaintiff also lodged complaints of racial discrimination to Defendant Pitmon on several occasions, however the same was ignored. Mr. Pitmon responded to the allegations with excuses such as "that's just the way he [Chris Burba] is", and "he means no harm." No investigation ensued, and Chris Barba was not subjected to any disciplinary action.

31. No actions were taken to protect Plaintiff from future retaliation, therefore the same continued until the final act of retaliation occurred when she was terminated on or about January 20, 2020.

32. Defendants' actions were intentional, willful and in reckless disregard of Plaintiff's rights as protected by the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended.

33. Due to Defendants' unlawful acts and conduct, Plaintiff has suffered harm and is entitled to damages. Accordingly, Plaintiff is entitled to all remedies to which a prevailing plaintiff is entitled for violations of Title VII, including without limitation, back pay, front pay, compensatory damages, punitive damages, costs and a reasonable attorney's fee against Defendants for such unlawful conduct.

### [COUNT TWO ]
### [Violation of 42 USC §1981- As Against Corporate Defendants: Pitmon and A&W; and Chris Burba, Individually]

For her Second Cause of Action, Plaintiff hereby adopts the allegations contained in numerical paragraphs one (1) through thirty -three (33) as if fully restated herein, and further alleges and states:

34. 42 U.S.C. §1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

35. 42 U.S.C. §1981 also prohibits retaliation for opposing discriminatory practices that the statute proscribes. *Cbocs West, Inc. v. Humphries*, 553 U.S. 442 (2008).

36. Plaintiff is Black/African American, and therefore a member of a protected class. Defendants knew of Plaintiff's protected class.

37. Defendants, each of them, intended to discriminate against Plaintiff based on her Race of Black/African American.

38. The racial discrimination by Chris Burba, outlined at paragraphs 4 thorough 22, above, impaired the existing at-will employment contract between Plaintiff and Corporate Defendants. Therefore, he should be deemed individually liable for Plaintiff's damages.

39. The unlawful termination by the Corporate Defendants, each of them, impaired the existing at-will employment contract between Plaintiff and Corporate Defendants. Therefore, they should be deemed jointly and severally liable for Plaintiff's damages.

40. During her employment, Plaintiff was subjected to different terms and conditions of employment and discriminated against because of her Race (Black/African American) by Defendants and agents of Defendants. Such adverse actions included but were not limited to: derogatory racial remarks; denial of recognition and awards for extended service with the company; denial of leave benefits; denial of her access to reporting complaints of discrimination by simply ignoring them; refusing to investigate her complaints of discrimination; and unlawful termination.

41. Corporate Defendants' acts of terminating Plaintiff were intentional, based on Plaintiff's race and constituted retaliation for her numerous complaints of discrimination which she made in order to oppose Defendants' impairment of the contractual relationship.

42. Supervisor Chris Burbas' acts of retaliation were intentional, based on Plaintiff's race, and constituted retaliation for her numerous complaints of discrimination which she made in order to oppose Defendants' impairment of the contractual relationship.

43. Due to Defendants' unlawful acts and conduct, Plaintiff has suffered harm and is entitled to damages. Accordingly, Plaintiff is entitled to all remedies to which a prevailing plaintiff is entitled for violations of 42 U.S.C. §1981, including without limitation, back pay, front pay, compensatory damages, punitive damages, costs and a reasonable attorney's fee against Defendants for such unlawful conduct.

**[COUNT THREE]**
**[ADEA-Age Discrimination In Employment Act**
**As Against Corporate Defendants: Pitmon and A&W]**

For her Third Cause of Action, Plaintiff hereby adopts the allegations contained in numerical paragraphs one (1) through forty -three (43) as if fully restated herein, and further alleges and states:

44. In approximately September 2019, when Plaintiff reached the age of sixty (60) years old, she applied and was approved for Social Security benefits. Therefore, she advised the owner, Mr. Pitmon, and supervisor Chris Barba, that she could no longer work overtime hours and would need to have a set work schedule.

45. Even though supervisor Chris Barba initially stated that it "wouldn't be a problem", he immediately began to harass and derogate Plaintiff about her new schedule. He stated to her that he wasn't going to need Plaintiff if she was not accessible to him when he needed her for work. The atmosphere became hostile and tense because supervisor Chris Barba's ageist remarks to Plaintiff, in the presence of other employees, made the other employees treat Plaintiff poorly.

46. Additionally, arguments began to ensue about Plaintiff's new schedule, while other Caucasian/White employees that were on Social Security benefits were not treated in the discriminatory manner that Plaintiff was so treated.

47. On January 19, 2020, Plaintiff's position on the breakfast shift was replaced and filled by Melissa Redwine (Caucasian/White).

48. Melissa Redwine was approximately 40 years of age, which was substantially younger than Plaintiff, and when placed in Plaintiff's position, she had

only been employed two (2) years with the company. Moreover, on information and belief, Melissa Redwine, was a convicted felon.

49. Plaintiff was 60 years old and within the protected class.

50. She was doing satisfactory work and regularly covered for other employees in their absence, and covered other areas when needed.

51. However, Plaintiff was discharged despite the adequacy of her work and her position was filled by a person younger than she and less qualified.

52. Due to Defendants' unlawful acts and conduct, Plaintiff has suffered harm and is entitled to damages. Accordingly, Plaintiff is entitled to all remedies to which a prevailing plaintiff is entitled for violations of 29 U.S.C. §621, including without limitation, back pay, compensatory damages, punitive damages, costs and a reasonable attorney's fee against Defendants for such unlawful conduct.

### [COUNT FOUR ]
### [Intentional Infliction of Emotional Distress]
### As Against Chris Burba, Individually

For her Fourth Cause of Action, Plaintiff hereby adopts the allegations contained in numerical paragraphs one (1) through fifty two (52) as if fully restated herein, and further alleges and states:

53. Plaintiff brings state law claims of Intentional Infliction of Emotional Distress as against Defendant Chris Burba, Individually.

54. Defendant owed a duty to Plaintiff to not conduct itself in its employment practices in such a manner that would cause Plaintiff to suffer injuries that were foreseeable.

55. Defendant knew or should have known that subjecting Plaintiff to bullying, harassment, derogatory racial remarks, ridicule, humiliation, embarrassment, disparate treatment, and retaliation, would cause Plaintiff to incur emotional distress, and the same was a foreseeable consequence of the unlawful conduct.

56. Defendant's acts were extreme and outrageous as Plaintiff was embarrassed in the presence of other employees as her supervisor ridiculed her by calling her "stupid" and "unlearned. Moreover, Defendant failed to perform and otherwise breached it duty owed to Plaintiff by continuing to refer to her "blackness" and how he hated her for not being a reliable person because she was Black.  Additionally, Plaintiff was on edge all day as Defendant yelled at her, called her a "no good Black woman", slammed objects about the work area and repeatedly reminded her of how worthless she was in his eyes.

57. Plaintiff's injuries were a direct and proximate cause of Defendant's failure to perform such duty to Plaintiff.  Plaintiff suffered emotional distress, including, but not limited to: loss of sleep, bouts of tearfulness, panic attacks, and depression.

58. Plaintiff's Physician documented Plaintiff's "change in stress level" over the years during her employment under the supervision of Defendant, and

recorded her traumatic symptoms that were directly associated with the workplace discrimination.

59. As a direct and proximate result of Defendant's actions and conduct, Plaintiff has suffered and will continue to suffer mental pain, mental anguish and suffering and emotional distress.

60. As a direct result of Defendant's wrongful acts and conduct, Plaintiff sustained damages and injuries.

61. Defendant's conduct as described herein was intentional and oppressive, and done with a conscious disregard of Plaintiff's rights, which entitled Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff prays that she be granted judgment in her favor and against the Defendants, each of them, on all of her claims and that this Court grant Plaintiff all available compensatory damages, back pay, front pay, loss of benefits, punitive damages, liquidated damages, pre- and post-judgment interest, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED this 24th day of May, 2021.**

        Respectfully submitted,

        s/Cynthia Rowe D'Antonio
        Cynthia Rowe D'Antonio, OBA #19652
        Green Johnson Mumina & D'Antonio
        4101 Perimeter Center Drive, Suite 110
        Oklahoma City, OK 73112
        405-488-3800: Telephone
        405-488-3802: Facsimile
        **ATTORNEYS FOR PLAINTIFF**
        **BONNIE HOOKS**

JURY TRIAL REQUESTED
ATTORNEY LIEN CLAIMED